UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ANTHONY RIVERA,                         :
                                        :
                        Plaintiff,      :    12 Civ. 760 (DLC)
                                        :
            -v-                         :    OPINION & ORDER
                                        :
NEW YORK CITY,                          :
                                        :
                        Defendant.      :
                                        :
----------------------------------------X


APPEARANCES

For the plaintiff Anthony Rivera:

Anthony Rivera, proceeding pro se
13-A-4571
Sing Sing Correctional Facility
354 Hunter St. Ossining NY, 10562-5442


For the defendant New York City:

Jeffrey S. Dantowitz
Office of the Corporation Counsel of the City of New York
100 Church Street, Room 2-121
New York, NY, 10007


DENISE COTE, District Judge:

    Anthony Rivera ("Rivera") brings this action pro se against

the City of New York ("the City") under 42 U.S.C. § 1983.

Rivera alleges constitutional violations in purportedly being

denied adequate dental care and clean linens while an inmate at

the Otis Bantum Correctional Center ("OBCC"), a facility

operated by the New York City Department of Correction ("DOC")
on Rikers Island.  Following discovery on the issue of whether
the plaintiff has exhausted his administrative remedies, the
City moved for summary judgment.  For the reasons that follow, a
hearing is required to determine whether Rivera was informed of
the procedures he must follow to exhaust his administrative
remedies.

BACKGROUND

    The following facts are undisputed.  Rivera is currently
incarcerated in the New York State Correctional System at the
Sing Sing Correctional Facility in Ossining, New York.  This
case concerns the period from July 28, 2011 through October 17,
2013, during which Rivera was an inmate at OBCC and alleges that
his constitutional rights were violated in being denied clean
linens and adequate dental care.

Procedural History

    On January 30, 2012, Rivera filed his initial complaint
alleging a number of different constitutional violations at
OBCC.  That complaint was substantially similar to the complaint
in the related case of Patterson v. City of New York, No. 11
Civ. 7976 (DLC).  In both cases, the plaintiffs named the same
defendants and raised similar claims.  By Order dated March 20,
2012, Rivera's case was stayed pending resolution of a motion to

dismiss in Patterson.[1]  In an Opinion issued on August 9, 2012,
the motion to dismiss the Patterson case was granted but the
plaintiff there was granted leave to re-plead claims regarding
access to medical care and denial of clean linens.[2]  Patterson v.
City of New York, 11 Civ. 7976 (DLC), 2012 WL 3264354 (S.D.N.Y.
Aug. 9, 2012).  By Order of August 10, Rivera was granted leave
to amend his substantially similar complaint with respect to any
claims regarding denial of access to medical care or to clean
linens.  The Court received Rivera's amended complaint on
September 19, 2012 ("Amended Complaint"), naming the City of New
York as the only defendant.

    On January 3, 2013, the City filed a motion to dismiss
Rivera's complaint on the grounds that the plaintiff failed to
state a claim, and that he had failed to exhaust his
administrative remedies as required by the Prison Litigation
Reform Act ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. §
1997e et seq..  By Order of August 15, the Court denied the
City's motion to dismiss on the grounds that: 1) the complaint
stated a claim for deliberate indifference to his dental care

---

[1] Rivera's complaint was one of seven that were identical or
nearly identical to the Patterson complaint.  Each of the seven
plaintiffs was given an opportunity to amend in light of the
Patterson decision.
[2] The Court has not yet resolved the extent to which the
Constitution may provide a right to clean linens in the context
of the claims here.

needs[3]; and 2) discovery was required as to whether prison officials hid the grievance process from Rivera such that his failure to exhaust the administrative remedies might be excused. The parties conducted discovery on the question of exhaustion of administrative remedies and the City's motion for summary judgment on the exhaustion issue was fully submitted on September 17, 2013.  The following facts are either undisputed or taken in the light most favorable to the plaintiff unless otherwise noted.

The OBCC Inmate Grievance Review Process

    OBCC has instituted a multi-step procedure to resolve inmate grievances called the Inmate Grievance Resolution Program ("IGRP").  First, an inmate may initiate the grievance process by completing an "Inmate Grievance Interview Slip" or an "Inmate Grievance Form" and giving it to an Inmate Grievance Resolution Committee member or Grievance Officer, or depositing it in a Grievance Box.  In the event that an inmate is unable to gain access to an official slip or form, he may write his initial grievance on an ordinary piece of paper.  At that point, there is supposed to be an attempt to resolve the grievance informally.  If there is no resolution or response within five

---

[3] Whether Rivera stated a claim of a constitutional violation in his argument about denial of clean linens was not addressed in the August 15 Order.

days, the second step in the process is that the inmate may request a formal hearing before the Inmate Grievance Review Committee ("IGRC"), and must use a specified "form #7101R" to do so.  If there is still no resolution, an inmate may appeal to the Warden, then to the Central Office Review Committee ("CORC"), and finally to the Board of Correction ("BOC").  The IGRP procedures also advise that "[i]f you do not receive a response to your grievance at any step of the Grievance Procedure within the time period required . . . you may proceed to the next step of the Grievance Procedure."

This multi-step grievance procedure is briefly outlined in the Inmate Handbook ("Handbook"), which is supposed to be given to inmates upon their arrival at OBBC.  The Handbook also informs inmates that "[m]ore detailed information on the time frames and process for all the steps in the procedure is included in [the DOC's Inmate Grievance Resolution Program Directive]," which is available at "the Grievance Office and the Law Library."

Health Care Service Complaint Process

Additional procedures exist for inmates who wish to file complaints pertaining to "the delivery of health care services" in a correctional facility.  The Charter of the City of New York vests the Department of Health and Mental Hygiene ("DoHMH") with

authority to "promote or provide medical and health services for the inmates of prisons maintained and operated by the city." N.Y.C. Charter § 556(d)(8).  DoHMH has issued policies and procedures that govern inmates' complaints about the delivery of medical, dental, and mental health care in the correctional facilities.  These procedures provide that

> [p]atients are encouraged to discuss health care complaints or requests for a second opinion with their applicable health care provider.  However, if a patient is dissatisfied with the outcome of this informal process, he/she must file a written complaint and place it in a "Second Opinion/Complaint Box."

According to the policy, a "Second Opinion/Complaint Box" is to be located in "every facility clinic and mini-clinic" in "an area which is visible and accessible to patients in the clinic." "Brochures which describe the available health services, how to access health services, how to file a complaint regarding health services (or appeal from a complaint determination) and/or a request for a second opinion," are, according to the procedure, "distributed at intake by health care staff."  The parties have not submitted evidence of whether OBCC followed these procedures for publicizing the DoHMH grievance procedure for complaints regarding health care services.

Rivera's Grievances

     Rivera submits copies of six grievances he filed at OBCC.
The City does not dispute the authenticity of any of Rivera's
grievance submissions.  The first grievance is dated August 15,
2012, and reads: "[t]he Search - There [sic] violating
inmates/can you please call me down to discuss more on the
matter in person."  The second grievance is dated August 29, and
reads: "I am requesting a formal hearing I have dropped several
slips and have not been called once on neither slip.  Can you
please respond to this formal hearing I would like to hold with
you."[4]  The third grievance is dated September 2, and reads: "I'm
[sic] would like to speak to you about medical & medication I
had a situation in sick call and need to speak to someone."  The
fourth grievance is dated 9, and in it Rivera complains in
detail that the OBCC search process, which requires him to place
all of his belongings in one of his two sheets (one of which is
purportedly used to cover the mattress and the other of which is
used to cover the sleeping inmate) and drag it across the
facility, results in his being denied adequately clean linens.
The fifth grievance is dated September 10, and in it Rivera
complains that the medicine he received following his dental

---

[4] This request for a formal hearing was not made on the special
"Form #7101R," which IGRP requires to be used for requests for
such hearings.

procedure was inadequate to address his pain.  And the sixth
grievance, dated September 21, 2012, consists of Rivera's
complaint that he had not been "called down" regarding any of
his previous grievances.  Additionally, Rivera wrote two letters
-- one to the DOC Commissioner, and one to the Board of
Correction Executive Director -- describing his complaints in
more detail.  He also attended an Inmate Council meeting, where
he relayed his complaints to OBCC authorities.  The letters and
his attendance at the Inmate Council meeting were not part of
the formal IGRP appeals procedure.  Rivera contends, and the
City does not dispute, that he never received a response to any
of his grievances.  Rivera also argues that he assumed that he
had exhausted his administrative remedies after taking the
aforementioned actions.


DISCUSSION
     Summary judgment may not be granted unless the submissions
of the parties taken together "show[] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The
moving party bears the burden of demonstrating the absence of a
dispute as to a material fact, and in making this determination
the court must view all facts in the light most favorable to the

non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denial" of the movant's pleadings.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.117 (1986); Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010).  Nor can a non-movant "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Baines, 593 F.3d at 166.  And "when [a] plaintiff proceeds pro se ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)

The PLRA requires a prisoner to exhaust all available administrative remedies before he can bring a civil rights action pursuant to 28 U.S.C. § 1983.  42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 93 (2006); Hernandez v. Coffey, 582 F.3d 303, 305 (2d. Cir. 2009).  The PLRA states that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2006). "[F]ailure to exhaust is an affirmative defense in a lawsuit governed by the PLRA." Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009). Where the prison's procedures permit appeal of an adverse ruling, to exhaust the available procedures a prisoner must file an appeal. Woodford, 548 U.S. at 90.

A prisoner's failure to exhaust his or her administrative remedies may be excused in limited circumstances. The Second Circuit set out a three-part inquiry in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004), which a court must follow to determine whether an inmate's failure to exhaust is excused. First, a court must investigate "whether administrative remedies were in fact 'available' to the prisoner." Id. (citation omitted). The test for the availability of administrative remedies is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." Id. at 688 (citation omitted). In determining whether administrative remedies are available to a particular inmate, a court should also "be careful to look at the applicable set of grievance procedures." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (citation omitted). If a court determines that administrative remedies were available, it should also inquire as to whether "the defendants' own actions

inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." <u>Hemphill</u>, 380 F.3d at 686.  Finally, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." <u>Id.</u> (citation omitted).[5]

Here, Rivera's amended complaint was indisputably filed before he had exhausted the multi-step grievance procedure at OBCC.  Consequently, unless he is entitled to one of the <u>Hemphill</u> exceptions, the case must be dismissed.

<u>Availability of Information on IGRP Procedures at OBCC</u>

The standard under <u>Hemphill</u> for whether an administrative grievance remedy was "available" is an objective inquiry as to whether "a similarly situated individual of ordinary firmness" have deemed them available." <u>Hemphill</u>, 380 F.3d at 688.  As the Supreme Court has noted, "the modifier 'available' [in the PLRA] requires the possibility of some relief for the action

---

[5] The Second Circuit has observed that the Supreme Court's emphasis in <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006), on the importance of strict adherence to grievance procedures might affect the continued viability of the <u>Hemphill</u> doctrine in some contexts.  <u>See</u> <u>Amador v. Andrews</u>, 655 F.3d 89, 102 (2d Cir. 2011).  However, <u>Woodford</u> did not speak to the question of the information an inmate must be provided about a grievance procedure in order for that procedure to be considered available.  Accordingly, <u>Woodford</u> does not affect <u>Hemphill</u>'s applicability here.

complained of." <u>Booth v. Churner</u>, 532 U.S. 731, 738 (2001).
"Available," as used in § 1997e(a), "refers to the procedural
means, not the particular relief ordered, since one exhausts
processes, not forms of relief." <u>Abney</u>, 380 F.3d at 667
(citation omitted).  District courts have consistently held that
an administrative remedy is not available to an inmate who is
not informed of the grievance procedure.  <u>See, e.g.</u>, <u>Burgess v.
Garvin</u>, 01 Civ. 10994 (GEL), 2004 WL 527053, at *3 (S.D.N.Y.
Mar. 16, 2004) (grievance remedy is unavailable "where prisoners
are not informed of their existence"); <u>Arnold v. Goetz</u>, 245 F.
Supp. 2d 527, 538 (S.D.N.Y. 2003) ("when an inmate claims
ignorance of the grievance procedure, it becomes a question of
fact whether the grievance procedure was an available
administrative remedy he was required to exhaust.") (citation
omitted).

Rivera claims that he was not informed of the appeals
process in the IGRP.  He makes several claims in support of this
contention.  First, he claims that despite his multiple first-
level grievances, he received no response from prison officials
and was consequently under the impression that he had exhausted
his administrative remedies.  He claims that prison officials
"never spoke about the appeal process or to whom a detainee
should write to in the event they were dissatisfied with the
process."  He also contends that he was "under the impression

12

that [he] had exhausted [his] remedies" and that "none of the
inmate [he] spoke to were aware of any process outside the
Inmate council and the grievance office."

Next, Rivera asserts that DOC never gave him an Inmate
Handbook.  The Inmate Handbook at OBCC describes the IGRP
grievance procedure.  It lays out the four step process,
including the three levels of appeals.  It does not contain
detailed information on the timeframes for each step, but rather
directs inmates to Directive 3375R, which it says is available
at the Grievance Office and the Law Library.

The City contends that Rivera was aware of the procedures
because he received the Inmate Handbook.  The City offers as
evidence of Rivera's receipt of the Handbook his signature on a
form that says "I hereby acknowledge that I received the Inmate
Rule Book and Inmate Handbook."  What appears to be Anthony
Rivera's signature appears on the form, dated June 19, 2009.
The form states that Rivera received "Handbook #7798."

Rivera states that he "never received an inmate handbook
upon admission to Department of Correction facilities" and that
"[t]hese books are provided to inmates upon admission to the
jail(s) when they are available."  Rivera does not dispute that
his signature appears on the receipt, but states that:

> Inmates are required to sign sundry documents upon
> admission to a DOC facility.  However, that does not mean
> they actually received such items or that anyone explained

to them what they are signing.  The atmosphere here does not lend itself [to] conversations about what is going on. The environment is very hostile, to put it mildly.

Additionally, Rivera offers declarations of fellow inmates.  The declarations submitted by Rivera consisted of identical pre-printed forms in which inmates could circle, <u>inter alia</u>, whether they received an Inmate Handbook.  Of the nine submitted, eight inmates claim that they did not receive Inmate Handbooks upon admission to OBCC.

The Second Circuit has intimated that whether an inmate received an inmate handbook might constitute "a contested issue of fact, despite a record that shows [an inmate] received the handbook."  <u>Ruggiero v. Cnty. of Orange</u>, 467 F.3d 170, 178 (2d Cir. 2006).  In light of the eight affidavits produced by Rivera, as well as his at least non-frivolous argument for why the presence of his signature might not reflect actual receipt of the Inmate Handbook, the question of whether he actually received a Handbook remains a genuine issue of material fact precluding summary judgment.  Resolution of this factual dispute will require a hearing.

As noted above, the City has also not submitted any evidence as to whether OBCC has publicized the DoHMH grievance procedure for complaints regarding health care services.  Rivera claims that he was unaware of any such procedure.  More

14

information is required to determine whether these procedures
were made known to Rivera.  This question will also require a
hearing.

In its reply, the City argues that even if Rivera did not
receive the Inmate Handbook, "this assertion alone does nothing
to support a finding that the grievance procedure was not
available" because Rivera could have learned about the IGRP
process by visiting the Grievance Office to inquire about the
required steps in the IGRP or by obtaining the assistance of
trained inmate legal assistants.  But if Rivera had not been
told that there was an IGRP appeals process he would not have
known to look for a description of its contours in either the
law library or at the Grievance Office.[6]  After all, an appeal is
typically brought after a decision has been made in an initial
adjudication.  Because the PLRA imposes on an inmate the duty to
exhaust all available remedies, and the IGRP makes an appeal
available, an inmate must file an appeal if he wishes to
properly exhaust his administrative remedies even if no action
has been taken on a grievance at the first level.  This is not
something that "a similarly situated individual of ordinary

---

[6] The City has not submitted evidence as to how the OBCC
Grievance Office functions and whether a similarly situated
reasonable individual of ordinary firmness would have learned
from that office about the ability and the procedure to appeal a
non-decision following the filing of a grievance.

firmness" would assume in the absence of being affirmatively so informed.  Hemphill, 80 F.3d at 686.  The City's argument that Rivera should have assumed that he was entitled to appeal even though he had received no response on his six grievances, and therefore was charged with affirmatively looking for a specific description of the appeals process, is unpersuasive.

The City also argues that Rivera's filing of several grievances reflects his understanding of the grievance procedure.  But this argument is misplaced.  Rivera complied with step one of the IGRP procedure.  It is the appeals procedure with which he failed to comply.  His filing of several first level grievances does not demonstrate that he was informed of the appeals procedure under IGRP.  And it is on Rivera's failure to appeal that the City relies when arguing that Rivera did not exhaust his administrative remedies.

The City also contends that Rivera's initial grievance was too vague to put OBCC officials on notice of the nature of his complaint.  The Second Circuit has said that "[w]hile this Court has found it appropriate to afford pro se inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally."  Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006).  But, even if the City is correct

that the first grievance was too vague, Rivera also filed five other grievances.  The City does not argue that those grievances were too vague to put OBCC on notice of claims regarding medical care or linens.

Finally, the City argues in its reply that Rivera "did not serve a response to [the City's] Local Rule 56.1 Statement of Material Facts Not In Dispute" and that consequently "all factual statements set forth in [the City's] Statement should be deemed admitted."  This argument is unavailing.  Rivera did submit a document styled as a "Plaintiff's Statement of Material Facts in Dispute," dated August 23, 2013,[7] which attempts to refute several of the City's factual claims, including the claim that he received the Inmate Handbook.  Moreover, Rivera also disputes the City's material factual statements in his opposition.  Because "when [a] plaintiff proceeds pro se ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations," McEachin, 357 F.3d at 200, the Court declines to mechanically deem all of the City's Local Rule 56.1 statements admitted.

---

[7] The City's Rule 56.1 Statement was filed on July 29, 2013.

CONCLUSION

A hearing is necessary to resolve the questions of whether Rivera received an Inmate Handbook or was otherwise given notice of the IGRP procedures and whether OBCC makes inmates aware of the DoHMH procedures for soliciting a second opinion on medical care decisions.  The City shall inform the Court no later than December 6, 2013 whether it wishes to continue with its PLRA exhaustion argument and attend a hearing, or whether it prefers to waive the exhaustion argument and proceed to the merits of this case.

SO ORDERED:

Dated:     New York, New York
           November 18, 2013

_____
                DENISE COTE
        United States District Judge

Copy sent to:

Anthony Rivera
13-A-4571
Sing Sing Correctional Facility
354 Hunter St. Ossining NY, 10562-5442