UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                          :

ANTHONY RIVERA,                  :

                                        :       <u>OPINION & ORDER</u>

                     Plaintiff,    :

                                          :       12 Civ. 760 (DLC)

          -v-                  :

                                          :

THE CITY OF NEW YORK,        :

                                          :

                     Defendant.   :

                                          :
---------------------------------------- X

APPEARANCES

For the plaintiff Anthony Rivera:

Anthony Rivera, proceeding <u>pro se</u>
13-A-4571
Sing Sing Correctional Facility
354 Hunter St. Ossining NY, 10562-5442

For the defendant City of New York:

Jeffrey S. Dantowitz
Office of the Corporation Counsel of the City of New York
100 Church Street, Room 2-121
New York, NY, 10007

DENISE COTE, District Judge:

    Anthony Rivera filed this action <u>pro se</u> against the City of
New York ("City"), pursuant to 42 U.S.C. § 1983 ("Section
1983"), alleging that he was denied adequate dental care and
clean linens while an inmate at a facility operated by the New
York City Department of Correction ("DOC") on Rikers Island.  On
March 13, 2014, a hearing was held to determine whether Rivera

had exhausted his administrative remedies as required by the
Prison Litigation Reform Act ("PLRA"), 110 Stat. 1321–71, as
amended, 42 U.S.C. § 1997e et seq.  The hearing addressed
principally Rivera's assertion that he had not been given
adequate notice of the right to appeal.  Witnesses at the
hearing described the notice provided to inmates of the
grievance process in an intake center at Rikers Island, at a Law
Library, and at a medical clinic during the period 2009 to 2012.
For the following reasons, the City's motion for summary
judgment on the ground that Rivera failed to exhaust his
administrative remedies is granted.


BACKGROUND

     Rivera's lawsuit was one of eight essentially identical
Section 1983 lawsuits filed in 2011 and 2012 complaining about
overcrowding at Rikers Island.[1]  After ruling on the merits of
the motion to dismiss filed in the first of the eight actions,
the Court gave each plaintiff the opportunity to amend their
complaint in light of that ruling.  The Court sent a copy of the
decision to each plaintiff, including Rivera.  The Court

---

[1] See Patterson v. City of New York, No. 11 Civ. 7976 (DLC);
Contino v. City of New York, No. 11 Civ. 8537 (DLC); Perry v.
City of New York, No. 11 Civ. 9161 (DLC); Dixon v. City of New
York, No. 11 Civ. 9274 (DLC); Williams v. City of New York, No.
12 Civ. 211 (DLC); Robertson v. City of New York, No. 12 Civ.
3382 (DLC); Simmons v. City of New York, No. 12 Civ. 4476 (DLC).

received Rivera's amended complaint on September 19, 2012.
Rivera attached six grievances to his amended complaint.

In an Opinion of November 18, 2013 ("Opinion") addressed to
the City's July 29, 2013 motion for summary judgment, the Court
noted that Rivera's amended complaint in this action was filed
before he had exhausted the multi-step grievance procedure at
the Otis Bantum Correctional Center ("OBCC") at Rikers Island.
Rivera v. New York City, 12 CIV. 760 (DLC), 2013 WL 6061759
(S.D.N.Y. Nov. 18, 2013).  Familiarity with that Opinion and
other Opinions issued in the course of this litigation is
assumed.  See Contino v. City of New York, 11 CIV. 8537 (DLC),
2013 WL 4015816 (S.D.N.Y. Aug. 7, 2013); Patterson v. City of
New York, 11 CIV. 7976 (DLC), 2012 WL 3264354 (S.D.N.Y. Aug. 9,
2012).  As a result, the Opinion noted that the action would be
dismissed unless Rivera were entitled to rely on one of the
exceptions to the exhaustion requirement set out in Hemphill v.
New York, 380 F.3d 680 (2d Cir. 2004).

Relying on decisions which have found that an
administrative remedy is not available to an inmate who is not
informed of the grievance procedure, the Opinion reviewed the
parties' submissions on this issue.  Rivera, 2013 WL 6061759, at
*5-7.  Rivera had asserted that he was not informed of the
appeals process, even though the appeal process is an essential
part of the Inmate Grievance Resolution Program ("IGRP").

Rivera insisted that he was under the impression that he had exhausted his administrative remedies when he received no response to the grievances that he filed.  In particular, he asserted that DOC never gave him an Inmate Handbook ("Handbook").  Id. at *5.  It is undisputed that the Handbook describes the IGRP grievance procedure, including the three levels of appeals that are available following the filing of a grievance.  See id. at *2.

The City offered evidence with its summary judgment motion that Rivera had received the Handbook.  It offered a form of acknowledgment bearing Rivera's signature.  Rivera admitted that the signature was his, but asserted that inmates simply sign the documents placed in front of them and the form should not be accepted as proof that he had actually received a Handbook. Rivera offered declarations of fellow inmates attesting to the fact that they had not received Handbooks when admitted to Rikers Island.  This Court concluded in the November 18 Opinion that a hearing was required to determine whether Rivera had adequate notice of the administrative remedies available to him. Id. at *7.

At a hearing held on March 13, 2014, five witnesses testified.  In addition to Rivera, testifying on behalf of the City were Patrick Brown, a captain with DOC assigned to the Vernon C. Baines Center ("VCBC"), a Rikers Island intake

4

facility; Shirley Canady, a grievance coordinator with DOC
assigned to OBCC; Michael Sinclair, a legal coordinator at the
OBCC law library; and Ruel Huffstead, Jr., a healthcare
contractor with Corizon Health, Inc., which provides medical
care at all of the facilities on Rikers Island.

The testimony and hearing exhibits demonstrated the
following.  Rivera had been incarcerated on Rikers Island six
times before the incarceration which prompted this Section 1983
action.  He remembers receiving the Handbook on some of those
prior occasions.  Rivera does not recall receiving the Handbook
when admitted to Rikers Island in 2009, which is the
incarceration that prompted this Section 1983 action, but he
does recognize his signature on the form acknowledging receipt
of the Handbook.

VCBC functioned as an intake facility for new inmates at
Rikers Island in 2009, including Rivera.  When Rivera was
admitted through VCBC in 2009, it was the standard procedure to
give every new inmate a copy of the Handbook during the intake
processing and to have the inmate sign a receipt for the
Handbook.  The receipt reads:  "Inmate Rule Book and Inmate
Handbook Receipt.  I hereby acknowledge that I received the
Inmate Rule Book and Inmate Handbook."  The form contains boxes
to insert the number of the issued Handbook and Rule Book, the
date, and the signature of the inmate.  Rivera signed this

receipt and the boxes for numbers for the Handbook and Rule
Book, and the date, were filled in.

Processing takes several hours, and at various times during
the processing, inmates wait in a large holding cell.  In that
holding cell, an eighteen minute tape describing the prison
facility and its procedures plays on a continual loop.  The tape
was played during the hearing.  The tape shows inmates holding
and reading their Handbooks, and the narrator repeatedly
instructs inmates that answers to their questions can be found
in the Handbook.

The City has shown that Rivera did receive a Handbook
during intake processing at VCBC in 2009.  That Handbook
described the four step grievance process and gave Rivera
adequate notice of the steps he must take to exhaust the
administrative process for any grievances that he wished to
pursue, including the availability of appeals in the event that
his grievance went unaddressed.

The Grievance Coordinator ("Coordinator") at OBCC collects
inmate grievance forms from various collection boxes three to
four times a week.  In response to the grievances, an inmate is
interviewed and then in a second interview is presented with a
proposed resolution or response to the grievance.  Records are
kept of all inmate grievances, and the forms reflecting these
interviews.  When the inmate is advised of a proposed

resolution, the Coordinator also discusses an inmate's options and answers any questions.  If appropriate, the Coordinator describes the appeal process.

The Coordinator searched the files for the grievances that Rivera attached to his amended complaint and found no record that he had ever filed any of them.  Rivera attached copies of six grievances bearing dates in August and September 2012.  The first grievance is dated August 15, and is a vague complaint about a search.  The second grievance is dated August 29, and is a complaint about a lack of response to prior grievances.  The third grievance is dated September 2, and is a complaint about the medical care Rivera received.  The fourth grievance is dated September 9, and is a complaint about lack of clean linens.  The fifth grievance is dated September 10, and is a complaint that the medicine Rivera received following a dental procedure was inadequate to address his pain.  And the sixth grievance, dated September 21, consists of Rivera's complaint that he had not been "called down" regarding any of his previous grievances.

The Coordinator was able to locate one grievance filed by Rivera.  The grievance was submitted in 2011, is addressed to Rivera's complaint about not being produced for a court date, and is not the subject of this Section 1983 action.

Rivera used the Law Library at OBCC.  Indeed, he was there in the early Fall of 2012 on one occasion for three hours.

Copies of the Handbook are available for inmates to read at the
Law Library, and they can also ask for copies of the document
that describes the grievance procedure.  A Legal Coordinator is
frequently on duty at the Law Library, and will direct the
inmates to the Handbook and the written description of the
grievance procedure when appropriate to answer their questions.

The medical clinic at OBCC has two waiting areas.  There is
a larger waiting area as one enters the clinic, and a smaller
row of seats near the examination cubicles.  Pamphlets
describing how to complain about medical care, complaint forms,
and forms requesting a second opinion are prominently displayed
in a wall mount in the reception area's large waiting area.  The
pamphlets are also kept in the examination cubicles.  There is a
robust process in the clinic area to give inmates an opportunity
to make complaints about their medical care and to obtain a
second opinion if they are dissatisfied.  A health services
administrator tries to react promptly to any complaints.

Huffstead, a medical care contractor at OBCC, keeps records
of inmate complaints about medical care.  A search of his files
located no record that Rivera ever made a complaint about his
medical care, including the September 2 grievance that he
attached to his amended complaint.

Rivera admits that he learned of the need to exhaust his
administrative remedies, including of the need to pursue

appeals, when he read the Opinion written by this Court in the
companion case, <u>Patterson</u>, 2012 WL 3264354, at *2.  Rivera
received the <u>Patterson</u> decision shortly after it was filed on
August 9, 2012.  Rivera understood from that Opinion that he
needed to file an appeal when there is no response to a
grievance.  Despite that admission, Rivera took no appeals in
connection with grievances that he asserts that he filed on
August 15, August 29, September 2, September 9, September 10, or
September 21, 2012.  While this is compelling evidence that
Rivera waived his right to exhaust the administrative remedies
provided to him by DOCS, it is as well evidence that Rivera
never filed those grievances.  It appears that Rivera created
those grievances in response to the Order of August 9, 2012,
which gave Rivera an opportunity to amend his complaint in light
of the ruling in <u>Patterson</u>.


DISCUSSION

     The PLRA requires a prisoner to exhaust all available
administrative remedies before he can bring a civil rights
action pursuant to 28 U.S.C. § 1983.  <u>See</u> 42 U.S.C. § 1997e(a).
The PLRA states that:

     No action shall be brought with respect to prison
     conditions under section 1983 of this title, or any
     other Federal law, by a prisoner confined in any
     jail, prison, or other correctional facility until

such administrative remedies as are available are
exhausted.

Id.

A prisoner's failure to exhaust his or her administrative
remedies may be excused in limited circumstances. In Hemphill
v. New York, the Second Circuit explained that a court must
determine "whether administrative remedies were in fact
available to the prisoner." 380 F.3d 680, 686 (2d Cir. 2004)
(citation omitted). The test for the availability of
administrative remedies is "an objective one: that is, would a
similarly situated individual of ordinary firmness have deemed
them available." Id. at 688. In determining whether
administrative remedies are available to a particular inmate, a
court should also "be careful to look at the applicable set of
grievance procedures." Abney v. McGinnis, 380 F.3d 663, 668 (2d
Cir. 2004) (citation omitted).

The grievance procedures at OBCC include the requirement of
appeal. See Rivera, 2013 WL 6061759, at *2. The IGRP
procedures provide that "[i]f you do not receive a response to
your grievance at any step of the Grievance Procedure within the
time period required ... you may proceed to the next step of the
Grievance Procedure."

An individual of ordinary firmness in Rivera's situation
would have deemed the grievance procedure at OBCC available to

him.  The City has shown that Rivera was advised of the grievance process and did not exhaust it.  Rivera received a Handbook during processing at OBCC, and Handbooks were available to him in the Law Library.  The Handbook provided notice of the grievance procedures at OBCC.  It appears that Rivera never provided prison officials with any of the six grievances he attached to his amended complaint.

In any event, even if Rivera did submit his grievances, the City has shown that Rivera did not utilize the appeals process when he received no response to those grievances.  The Handbook advised Rivera about the appeals process.  In addition, Rivera acknowledges having received this Court's opinion in Patterson, 2012 WL 3264354, at *2, which recounted the requirement to appeal grievances not resolved within the applicable time limit.  Rivera's failure to exhaust his administrative remedies is consequently not excused under Hemphill.  See 380 F.3d at 686.

CONCLUSION

The City's July 29, 2013 motion for summary judgment is granted.  The Clerk of Court shall close the case.


SO ORDERED:

Dated:    New York, New York
          April 29, 2014


_____
               DENISE COTE
        United States District Judge

```
COPY MAILED TO

Anthony Rivera
13-A-4571
Sing Sing Correctional Facility
354 Hunter St. Ossining NY, 10562-5442
```